## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **KAREN A. RITTINGER,** ) | |
| ) | |
| **Plaintiff,** ) | Case No: 4:15-cv-01548-CAS |
| ) | |
| v. ) | |
| ) | |
| **ANTHEM UM SERVICES, INC.,** *et al.* ) | |
| ) | |
| **Defendants.** ) | |

### RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE WHY IT SHOULD NOT SANCTION PLAINTIFF'S COUNSEL PURSUANT TO 28 U.S.C. §1927

1. For the following reasons, sanctioning the Undersigned to punish him even more than this Court already has would constitute a gross abuse of the Court's discretion.

2. As an initial point, the Undersigned points out that he already has been forced to suffer enough, learning a harsh lesson about the potential pitfalls of using strident language and novel arguments perhaps not thoroughly articulated. As the Court knows, the Undersigned is a solo practitioner: literally, every hour that the Undersigned expends on one matter constitutes a loss of time that could be spent on another matter. Because monetizing the value of such time is the essence of the practice of law, this also, for a solo practitioner, means a direct loss of income. *Already,* as the result of multiple, arguably-improper rulings by this Court, the Undersigned – for more than a month – rather than being allowed to "walk away" from this matter, instead has been forced to expend well more than one hundred hours of uncompensated time defending himself with *detailed* refutations of this Court's and Defendants' conclusory and unfounded personal attacks, accusations of "abusive litigation" and claims of frivolous arguments *over and over.* Conservatively, the fair market value of the Undersigned's uncompensated time expended on this matter beyond when it should first have been closed, is at least **$30,000.00** and continues to rise.

3. Thus, monetary sanctions effectively already *have been* imposed upon the Undersigned (in an extreme amount); anything further – *especially* in light of the less-than-compelling circumstances here – would be wildly out of bounds and a gross abuse of discretion.

4. To put this matter in perspective, throughout its entire history, the United States District Court for the Eastern District of Missouri has granted a mere handful of motions for sanctions under 28 U.S.C. §1927 presented by litigants.

5. More specifically, in diligently researching these issues with the most up-to-date electronic research platforms, the Undersigned was not able to find a *single* case in the history of this Court in which a Judge, following voluntary dismissal and closure of a case, <u>on his own motion</u>, moved for sanctions, found initial grounds therefore, and then ordered an attorney to show cause to avoid paying sanctions under 28 U.S.C. §1927.

6. Thus, this Court's actions, objectively, could fairly be characterized as being the **most aggressive** attempt (from a procedural standpoint) **ever taken** by a this District Court to extract sanctions from a litigant, to say nothing of the roughly $30,000 in lost income this Court has cost the Undersigned by sending him on more than one "fool's errand."[1]  One would expect, in light of courts' mandates to cautiously apply 28 U.S.C. §1927, that the federal Eastern District of Missouri's historically most-aggressive attempt to sanction a litigant necessarily would be spurred only by the most-egregious behavior.  Here, obviously that is not the case; in fact, arguably the "reverse"

---

[1] This brief actually is a glaring example of such a "fool's errand." Defendants moved for this Court to apply sanctions under 28 U.S.C. §1927 for all of the same reasons the Court now refers to in its Order to Show Cause. Plaintiff, in a 15-page Response, went into great detail explaining why his arguments were not frivolous and his behavior more "professional" than opposing counsel (to point out why sanctions against Plaintiff's counsel alone would be so inequitable). (Doc. 32).  Defendants never filed a Reply, essentially abandoning their bid for sanctions, and this Court closed the case. (Doc. 33). Then, for reasons not fully known, the Court *on its own* motion ordered the Undersigned to Show Cause why he should not be sanctioned – effectively telling the Undersigned to *again* respond to the exact same accusations he already thoroughly refuted. (Doc. 34).

2

situation is true – the Court is taking this District's historically most-aggressive approach towards a litigant guilty of, at most, some of the least-egregious behavior in the history of sanctions under 28 U.S.C. §1927.

7. In addition, it cannot be overlooked that the overwhelming body of case law on Rule 41 notices deems that this case should be considered closed as of December 29, 2015 – at least eleven docket-entries ago, with all subsequent proceedings rendered a nullity. The monolithic body of case law mandating such a result was thoroughly outlined in **Plaintiff's Memorandum Objecting To the Court's Order Providing Defendants With Leave to File "Any" Motions (Doc. 32)**, which the Undersigned hereby incorporates, along with all of its exhibits, as if fully set forth herein.

8. Alternatively, as this Court ultimately agreed, this case was closed as of January 14, 2016, which *definitely* renders all subsequent proceedings a nullity.  It is an extremely harsh approach for this Court, despite confirming that fact, to nonetheless use the fact Plaintiff objected to the Court's alternative approach as a potential basis for awarding sanctions.

9. Moreover, as the Undersigned pointed out in his **Motion for Judicial Disqualification (Doc. 35)**, the extremely aggressive – from an *objective* standpoint, as noted above – attempt by this Court to continue punishing the Undersigned to almost no end, in and of itself, is more than a bit outrageous.  Combined with the relatively non-compelling grounds for the potential sanctions, such approach revealed such a deep-rooted hostility and bias towards the Undersigned that it spurred the Undersigned to further investigate the "conflict" the Undersigned now believes irreparably tainted this matter from the outset. *Id.* As to that issue, in addition, to those assertions stated herein, the Undersigned hereby also incorporates its Motion for Judicial Disqualification (Doc.35), along with its attached exhibits, as if fully set forth herein.

10. In further investigating the matter, the Undersigned found that a much greater conflict of

interest existed than was first apparent by this Court's order revealing that "one of his clerks" was the spouse of an equity partner for Defendants' law firm. (Doc. 8).

11. As the Undersigned stated in his Motion for Disqualification, as it turns out, the "affected clerk" is a career clerk, as is the clerk ostensibly assigned to this matter. This creates a *much* greater appearance, at the least, of bias, requiring this Court's immediate recusal from this matter (which for whatever reason it has not yet done) pursuant to two federal statutes and the U.S. Constitution. In particular, 28 U.S.C. §455(b), addressing circumstances that would lead a reasonable person, fully-informed to question a judge's ability to be impartial due to a "personal bias" in favor of one party is implicated, cannot be waived, and requires immediate recusal.

12. After further examining the docket-sheet, and using his past knowledge having worked for years as a federal clerk, the Undersigned also was able to determine that the Court's most objectionable order (Doc. 28), not only was entered in less than ten minutes, *but also* was entered by a completely separate career clerk, one who job-shares with the affected clerk. Seeing this, it appeared to the Undersigned ever more doubtful that the Court's "screening" procedures noted in Docket Entry #8, could nullify the partially-disclosed conflict of interest. Further, while it likely is beyond the scope of this brief, and certainly somewhat speculative, the very timing of the Court's entry of Docket Entry #24, ordering an amendment be filed prior to allowing dismissal is, in retrospect, questionable. Plaintiff filed a notice of voluntary dismissal on December 29, 2015, thus automatically closing the case for all intents and purposes (Doc. 23). For nearly two weeks, nothing happened (which was, in the Undersigned's eyes, normal). Notably, the Court's deadline for Amendment came and went without the Court making any comment in relation thereto. The Undersigned has a national practice and, during the week of January 11, 2016, scheduled a swearing-in before Judge Sippel of this Court for entry into another federal district Court, to take place on

4

January 15, 2016. As this Court knows, the scheduling of such events are, if not publicly-available, available to courthouse personnel, including the Judge's clerks. January 14, 2016 otherwise is a fairly random date in the course of this matter. Indeed, it is a completely random date, especially since the Court chastised the Undersigned for having missed its deadline to amend (that passed a week prior). Assuming that cognitive bias in favor of Defendants interfered with any otherwise sound judicial decision-making, the chain of events makes sense, as the *only* way to have prevented a re-filing in another jurisdiction would have been to have ordered amendment, which would have allowed Defendants to promptly file an answer (which they likely would have sought to later amend) thus preventing Plaintiff from having the right to voluntarily dismiss under Rule 41. The Undersigned again emphasizes and realizes such chain of events is speculative, but it is probably the only theory that makes sense out of a *glaring* oddity – when Plaintiff first voluntarily dismissed, Defendants said nothing for more than two weeks (probably assuming Plaintiff "gave up"); when Plaintiff voluntarily dismissed a second time (after amending the complaint in conformance with the Court's order), Defendants immediately objected the very next morning, filing a mislabeled "extension" motion that actually was a request for leave to file objections and/or other motions, *with no support* as to why they should be allowed to do so after a case had been voluntarily dismissed. As previously noted, the Court granted that Motion in less than ten minutes, improperly opening the door to allow Defendants to file 20+ pages of objections and accusations against the Undersigned and, as the Court has noted, things "escalated" from there.

    13. It is against this backdrop that the Court needs to consider that there is a very real possibility – and in fact there are fairly clear signs of – that a cognitive, if not intentional bias, caused by the presence of the "affected clerk," has (perhaps unknowingly and/or unintentionally) skewed the Court's view of the entire course of events unfolding in this matter.

5

14. For all of those reasons, even *if* the Court's findings in support of levying sanctions were sound, the Undersigned, having expended countless, frustrating hours responding to motions and orders accusing him of personal improprieties only to realize his though-out, genuine explanations for the same repeatedly have been ignored, has been punished enough.

15. The Undersigned, by this Court and Defendants has been personally and publicly degraded, and has been made to work well over one hundred hours, without any compensation, dealing with a matter that *should* have been closed months ago.

16. Moreover, in light of the conservatively-estimated $30,000 loss of income, the Undersigned, a solo practitioner, already has paid enough, and (especially in light of the loss of income caused by his having to deal with this matter) should not also now be forced to shoulder the legal fees of a multi-billion-dollar insurance conglomerate.

17. All that said, of course, the Court's findings purportedly supporting the imposition of sanctions are erroneous and/or completely subjective.

18. As the Undersigned already has pointed out the "imposition of sanctions is a serious matter and should be approached with circumspection." *O'Connell v. Champion Int'l Corp.,* 812 F.2d 393, 395 (8th Cir. 1987). Courts should exercise their inherent sanctioning authority "with *restraint* and discretion." *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005) (quoting *Harlan v. Lewis*, 982 F.2d 1255, 1262 (8th Cir. 1993)). Even where bad faith is present, sanctions are appropriate "only in the most egregious of cases." *Doe v. Univ. of the Pac.,* No. CIV. S-09-764, 2010 WL 5129530, at *1 (E.D. Cal. Dec. 8, 2010). An imposition of sanctions should address "conduct that constitutes willful abuse of judicial process or fraud upon the court." *Great Lakes Gas Transmission Ltd. v. Essar Steel Minn., LLC* , (D. Minn.; Case No. 09-cv-3037, January 19, 2016), at *3.

19. The Court's primary argument for sanctions is that essentially all of Plaintiff's arguments,

particularly that for remand, were "frivolous"; those sweeping assertions are completely misplaced and based on gross mischaracterizations of Plaintiff's actual arguments.

    a. As just one example, it is erroneous for the Court to have adopted *Defendants'* mischaracterization of Plaintiff's argument for remand. Plaintiff did *not* argue that *any* case should have been overruled or even "modified," as the Court now puts it. In particular, Plaintiff argued that *regardless of* the Supreme Court's *Murphy* decision – which stood for the proposition that a party should receive a formal summons along with a petition in order to trigger the 30-day removal time period – Defendants allegations in support of this Court's jurisdiction were **implausible.** (Doc. 21, pp. 3-6)

    b. And, Plaintiff argued, the same reasoning underlying *Twombly* – that a federal cause of action must be based upon *plausible* allegations – **also** applied, or should apply, to a removing Defendant's allegations. *Id.*

    c. This Court failed to even consider this argument and now summarily declares it "frivolous," parroting Defendants' simplistic and arbitrary affixing of labels to arguments apparently not even understood.

    d. The United States Supreme Court, at the least, would vehemently disagree with this Court that this line of argumentation is "frivolous."

    e. In *Dart Cherokee Basin Operating Co., LLC et. al. v. Owens,* 135 Sup. Ct. 547 (2014) the Supreme Court expressly held "[a]s specified in §1446, a defendant's notice of removal need only include a **plausible** allegation that the amount in controversy exceeds the jurisdiction threshold; the notice need not contain evidentiary submissions." *Id.* at 551.

7

    f. Why did the United States Supreme Court hold that such removal allegations need to be "plausible"? Because, as the Court also expressly held: "[b]y borrowing Rule 8(a)'s 'short and plain statement' standard, corroborative history indicates Congress intended to clarify that courts should "apply the same … rules [to removal allegations as] to other matters of pleading." *Id.,* citing H. R. Rep. No. 100–889, p. 71.

    g. In other words, *exactly as Plaintiff argued* in moving to remand, because the language of §1446 tracks that of Rule 8(a), *Twombly,* which refined that precise language, logically did so for §1446 as well. (Doc. 21, pp. 3-6).

    h. In *Owens,* the plaintiff presented evidence tending to disprove the defendants' removal allegations as to the amount in controversy. *Owens,* 135 Sup. Ct. at 551.

    i. Doing so then placed the burden upon the *defendants* to provide proof supporting their allegations as to the amount in controversy, which defendants did, allowing them to remove. *Id.*

    j. In this case, Plaintiff did almost the exact same thing – due to what Plaintiff admitted from the outset were relatively unusual circumstances (Plaintiff having a long-standing friendship with an Anthem executive who was intimately familiar with the nature of her claim and whom Plaintiff expressly informed she had filed suit) – Plaintiff presented evidence tending to show that Defendants' §1446 allegations were implausible, and argued that, in order to at least meet their burden of production, Defendants should be required to provide at least *some* evidence refuting Plaintiff's showing, which Defendants never did (Doc. 21, pp. 4-5).

20. One of the primary "abusive" litigation tactics plaintiff's counsel employed, according to this

Court, was proposing that a standard of "plausibility," along with a burden-shifting process – as the Supreme Court found appropriate in *Owens* as to one removal requirement, the amount in controversy – also should apply to a removing defendants' allegations as to time of receipt. *Id.*

21. Yet the Supreme Court *already had found meritorious Plaintiff's precise argument*; Plaintiff simply suggested that the Supreme Court's reasoning as to pleading the amount-in-controversy on removal should also have applied to pleading time of receipt on removal. *Id.* Plaintiff, as this Court knows, did not prevail on that argument, as this Court declared the Supreme Court's reasoning – Plaintiff's argument for remand – was "frivolous," and summarily rejected the same.

22. In summary, this Court's purported basis for sanctions are:

   a. "Heated rhetoric," which appears to have no precise definition but rather is determined as "rhetoric" on an entirely subjective basis by either this Court or Defendants;

   b. The Undersigned's objecting to the Court's granting of a mislabeled motion for leave in less than ten minutes – an action that the Court itself now *confirms* was a nullity (that fact, however, does not exonerate the undersigned for having "abusively" pointed the same out to the Court);

   c. The Undersigned somehow "multiplying proceedings" by *responding* to Defendants' motion to dismiss; and

   d. The Undersigned's argument on remand that, despite mirroring that of the United States Supreme Court regarding the precise language at issue, was nonetheless deemed "frivolous," and given no consideration by this Court whatsoever.

23. In addition to the above points, it is worth noting that this Court's Order to show Cause is unsound in various other particulars as well.

9

24. As just one example, any disinterested observer should be alarmed by statements such as the following, contained in the Motion to Show Cause: "the Court finds plaintiff's opposition to defendants' motion to dismiss was also frivolous *and was presented for purposes multiplying the proceedings.*" (Doc. 34, at p. 6). It is truly befuddling how a **response** to a motion to dismiss could be deemed "as presented for purposes multiplying the proceedings." *Id.* Is this Court implying the Undersigned should have explained to his client that Defendants' legal arguments were so overwhelmingly correct that Plaintiff simply should have conceded every point and simply not responded?

25. Similarly, the Court stated: "Defendants stated plaintiff's unwarranted accusations … were highly inappropriate [and] thought it appropriate to enter sanctions in the form of dismissal with prejudice or payment of defendants' attorneys' fees and costs. Plaintiff filed a seventeen-page reply. Instead of refraining from the use of hostile rhetoric, plaintiff vehemently denied using abusive litigation tactics and language, and insisted it was defendants' counsel that should be sanctioned." (Doc. 34).

26. In other words, according to this Court, after the Undersigned was accused by defense counsel of making "inappropriate statements" requiring dismissal with prejudice, it was "hostile rhetoric" for Plaintiff's counsel to deny the accusations and to argue defendants instead were deserving of sanctions. *Id.*

27. Moreover, what this Court now refers to simply as an "attack on defendants' counsel," was **in fact** a comparison and illustration showing that the number of the type of remarks this Court declared "unprofessional" made by defense counsel dwarfed those made by plaintiff's counsel (Doc. 32 at 7-15). The Court, for whatever reason, completely ignored this point, focusing instead on the length of the document, which the Court states is "seventeen pages," ignoring the fact that, in precise conformity with the Court's Local Rules, the document is 15 pages long, not included a one-

10

page signature block and one-page certificate of service. *See* E.D. Mo. Local Rule 4.01.

28. Finally, regarding the Court's conclusory assertion that the Undersigned violated Missouri Supreme Court Rule 4-3.5(d), the Court apparently believes Plaintiff violated this Rule by "engaging in conduct intended to disrupt the tribunal." For all of the above reasons, the Undersigned has caused no such "disruption;" and even if the Undersigned has violated such an ephemeral standard, the Undersigned certainly did not do so intentionally.

**WHEREFORE**, for all of the reasons mentioned herein, as well as those set forth in the documents expressly incorporated herein, even if the Court's findings in support of the imposition of sanctions were sound, monetary sanctions would be unduly harsh, as the Undersigned already has paid dearly for any transgressions, will refrain from an overly-strident argument in the future and by all means has learned his lesson, with apologies to this Court and to Defendants and their counsel; all that said, the Undersigned in good faith believes that the Court's findings in support of potentially imposing sanctions are erroneous and that sanctions should be summarily prohibited.

Respectfully submitted,

_____
Daniel F. Harvath  #57599
**THE DANIEL HARVATH LAW FIRM, LLC**
P.O. Box 440393; St. Louis, Missouri 63144
Phone: 1 (877) 386-7555
dharvath@dhlawfirmllc.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby swears and attests that this document was submitted for automatic electronic service to all parties of record, pursuant to the Local Rules' allowance of the same.

_____/s/Daniel F. Harvath ____